11-3893-pr (L); 12-0439-pr
Vincent v. Yelich; Earley v. Annucci

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2012

(Argued:  October 16, 2012                    Decided:  June 4, 2013)

Docket Nos. 11-3893-pr, 11-3966-pr, 12-0439-pr

_____

SHAWN MICHAEL VINCENT, JIMMIE JOHNSON, SENECA ROBINSON, GARY ST. MARY, WALTER EADES, REGINALD JOHNSON, DONALD MCLEAN, JEFFREY PALMER, WAYNE B. WRIGHT, JR., SHAWN GOODMAN, DAVID WADDELL,

Plaintiffs-Appellants,

- v. -

BRUCE S. YELICH, Superintendent, Bare Hill Correctional Facility, in his official and unofficial capacity; BRIAN FISCHER, in his individual capacity and his official capacity as Commissioner of the New York State Department of Correctional Services; ANTHONY J. ANNUCCI, in his individual capacity and his official capacity as Executive Deputy Commissioner of and counsel to the New York State Department of Correctional Services; RICHARD deSIMONE, in his individual capacity and his official capacity as Associate Counsel in Charge of the Office of Sentencing Review of the New York State Department of Correctional Services; LUCIEN J. LECLAIRE, JR., in his individual capacity; GLENN S. GOORD, in his individual capacity; HENRY LEMONS, JR., in his individual capacity and his official capacity as Chairman and Chief Executive Officer of the New York State Division of Parole; GEORGE B. ALEXANDER, in his individual capacity; ROBERT DENNISON, in his individual capacity; BRION D. TRAVIS, in his individual capacity; and JOHN and JANE DOES 1-50, various training, supervisory and policymaking employees of the New York State Department of Correctional Services or the New York Division of Parole, in their individual capacities,

Defendants-Appellees.

_____
_____

SEAN EARLEY,

Plaintiff-Appellant,

- v. -

ANTHONY J. ANNUCCI, in his personal and official capacities as Executive Deputy Commissioner of and counsel to the New York State Department of Correctional Services; BRIAN FISCHER, Commissioner of the New York State Department of Correctional Services, in his official capacity and his unofficial capacity; RICHARD deSIMONE, in his individual capacity and his official capacity as Associate Counsel in Charge of the Office of Sentencing Review of the New York State Department of Correctional Services; LUCIEN J. LECLAIRE, JR., in his individual capacity; GLENN S. GOORD, in his individual capacity; HENRY LEMONS, JR., in his individual capacity and his official capacity as Chairman and Chief Executive Officer of the New York State Division of Parole; GEORGE B. ALEXANDER, in his individual capacity; ROBERT DENNISON, in his individual capacity; BRION D. TRAVIS, in his individual capacity; and JOHN and JANE DOES 1-50, various training, supervisory and policymaking employees of the New York State Department of Correctional Services or the New York Division of Parole, in their individual capacities,

Defendants-Appellees.

_____

Before: KEARSE, KATZMANN, and PARKER, Circuit Judges.

Appeals challenging judgments of the United States District Courts for the Western District of New York and the Northern District of New York, respectively, dismissing, on grounds of qualified immunity, plaintiffs' complaints alleging, on the basis of Earley v. Murray, 451 F.3d 71 (2d Cir.), reh'g denied, 462 F.3d 147 (2d Cir. 2006), cert. denied, 551 U.S. 1159 (2007), that defendants' imposition and enforcement of post-release-from-prison conditions without a judicial order was unconstitutional. See Vincent v. Yelich, 812 F.Supp.2d 276 (W.D.N.Y. 2011); Earley v. Annucci, No. 08-cv-669, 2012 WL 264210 (N.D.N.Y. Jan. 30, 2012).

Affirmed in part; vacated and remanded in part.

K. WADE EATON, Rochester, New York (Matthew J. Fusco, Jon P. Getz, Gary Muldoon, Rochester, New York, on the brief), for Plaintiffs-Appellants.

ZAINAB A. CHAUDHRY, Assistant Solicitor General, Albany, New York (Eric T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, Albany, New York, on the brief), for Defendants-Appellees.

KEARSE, Circuit Judge:

Plaintiffs Shawn Michael Vincent and Jimmie Johnson et al., former New York State ("State") prisoners who brought separate actions in the district court and whose appeals have been consolidated in this Court, appeal from a judgment of the United States District Court for the Western District of New York, David G. Larimer, Judge, dismissing Vincent's second amended complaint ("complaint") and Jimmie Johnson's amended complaint ("complaint") (collectively the "Vincent/JJohnson complaints") against officials and employees of the New York State Department of Correctional Services ("DOCS") and the New York State Division of Parole ("Parole Division" or "Division") (collectively "DOCS and Parole officials"). The Vincent/JJohnson complaints, brought under 42 U.S.C. § 1983 for damages and declaratory relief, alleged that defendants violated plaintiffs' due process rights as announced in Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936) ("Wampler"), and described in Earley v. Murray, 451 F.3d 71 (2d Cir.) ("Earley I"), reh'g denied, 462 F.3d 147 (2d Cir. 2006) ("Earley II"), cert. denied, 551 U.S. 1159 (2007), by administratively imposing and enforcing conditions of supervision on plaintiffs following their release from prison,

3

despite the absence of any order for such supervision by the courts that sentenced plaintiffs for their crimes. The district court granted defendants' motions to dismiss the Vincent/JJohnson complaints pursuant to Fed. R. Civ. P. 12(b)(6), ruling that defendants were entitled to qualified immunity because the unconstitutionality of the administrative imposition of such supervision was not clear prior to Earley I, and State cases decided after Earley I made it unclear that administrative imposition of such conditions was unconstitutional. Plaintiff Sean Earley, whose appeal was heard in tandem with those of Vincent and Jimmie Johnson, appeals from a judgment of the United States District Court for the Northern District of New York, Frederick J. Scullin, Jr., Judge, granting summary judgment dismissing, also on the basis of qualified immunity, Earley's second amended complaint ("complaint") asserting similar claims for damages against most of the same corrections and parole officials.

On appeal, plaintiffs contend principally that the defendant DOCS and Parole officials are not entitled to qualified immunity because Earley I determined that the rights asserted by plaintiffs had been sufficiently clearly established decades earlier by Wampler. For the reasons that follow, we conclude that Earley I, an appeal from the denial of habeas corpus, did not rule that those rights were clearly established by Wampler with respect to a defense of qualified immunity; but we conclude that Earley I itself, decided on June 9, 2006, did clearly establish the unconstitutionality of the administrative imposition or enforcement of postrelease conditions that were not judicially imposed. Accordingly, and for the reasons that follow, we vacate so much of the judgments of the district courts as dismissed claims that defendant Anthony J. Annucci, DOCS's Executive Deputy Commissioner and counsel, administratively imposed, enforced, or supervised employees who imposed or enforced,

4

such conditions on any plaintiff after that date. We affirm the judgments to the extent that they dismissed plaintiffs' claims against the other defendants.

# I. BACKGROUND

Plaintiffs are persons who were convicted of various New York State crimes committed on or after September 1, 1998, were sentenced to prison terms that they served, and were released from prison at various times between 2002 and mid-2007. It appears to be undisputed as to each plaintiff that, either during his term of imprisonment or upon his release from prison, he was informed that he was subject to postrelease supervision ("PRS") conditions of which he had not been informed by the court and which were not stated in the written order of commitment. Most of the plaintiffs were reincarcerated following determinations that they had violated their PRS conditions. (See Part II.D. below.)

The named defendants in each of the three complaints (collectively the "Complaints") include five DOCS officials and four Parole Division officials. The defendant DOCS officials in addition to Annucci are identified as follows: Brian Fischer, Commissioner since January 1, 2007; Richard deSimone, Associate Counsel in Charge of the Office of Sentencing Review; Lucien J. Leclaire, Jr., former Acting Commissioner from August 30, 2006, to December 31, 2006; and Glenn S. Goord, former Commissioner from 1996 to August 30, 2006. The defendant Parole Division officials are identified as Henry Lemons, Jr., the Division's Chairman and Chief Executive Officer since February 9, 2009, and three defendants who formerly held those positions: George B.

Alexander from 2007 to 2009; Robert Dennison from 2003 to 2007; and Brion D. Travis from 1995 to 2003. The remaining named defendant, Bruce S. Yelich, as Superintendent of the Bare Hill Correctional Facility, is named only in the caption of the Vincent complaint and is nowhere mentioned in the body of the Complaints.

Although some of the defendants were originally sued in both their individual and official capacities, the official-capacity claims in the Vincent and Jimmie Johnson actions were withdrawn, leaving claims against them in those two actions only in their individual capacities.

A. Postrelease Supervision in New York

In 1998, the New York Legislature passed a sentencing reform act (or the "Act")--commonly known as "Jenna's Law"--which, inter alia, established "a scheme of determinate sentencing" for violent felony offenders, eliminated parole for all such offenders, and required that determinate terms of imprisonment be followed by periods of mandatory postrelease supervision. People v. Catu, 4 N.Y.3d 242, 244, 792 N.Y.S.2d 887, 888 (2005) ("Catu"). The section of the Act at issue here provided in pertinent part that

> [e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision. . . . [A] violation of any condition of supervision occurring at any time during such period of post-release supervision shall subject the defendant to a further period of imprisonment of at least six months and up to the balance of the remaining period of post-release supervision, not to exceed five years.

1998 N.Y. Laws Ch. 1, § 15 (codified at N.Y. Penal Law § 70.45[1] (McKinney 2004) (emphasis added)), amended by 2008 N.Y. Laws Ch. 141, § 3 (codified at N.Y. Penal Law § 70.45[1] (McKinney 2009) (requiring that the required PRS term be stated by the court when imposing

6

sentence)); see also id. § 70.45[2] (McKinney 2004), amended by 2004 N.Y. Laws Ch. 738, § 35 (codified at N.Y. Penal Law § 70.45[2] (McKinney 2009) (providing, with certain exceptions, a maximum term of five years' PRS)). The Legislature intended "postrelease supervision [to be] a distinct but integral part of the determinate sentence," Catu, 4 N.Y.3d at 244, 792 N.Y.S.2d at 888 (internal quotation marks omitted).

Following the 1998 effective date of Jenna's Law and until the revision of § 70.45[1] in 2008, some judges did not inform defendants who were pleading guilty that they would be subject to PRS, a failure that the New York Court of Appeals in Catu ruled unconstitutional, see id. at 245, 792 N.Y.S.2d at 888-89. And in some cases the defendants' commitment orders likewise did not mention PRS.

DOCS's position in the present actions is that its understanding during the relevant period was that PRS was imposed automatically by operation of the Act and did not need to be expressly imposed by a sentencing judge. (See, e.g., January 14, 2011 Memorandum of Law in Support of Defendants' Motion To Dismiss Vincent's complaint at 2 n.3 ("DOCS' position [is] that it has not 'added' anything to plaintiff's sentence. . . . DOCS has simply enforced a consequence of the plaintiff's determinant [sic] sentence which is automatically effectuated pursuant to the Penal Law."); Defendants' brief in Vincent/JJohnson appeal at 5-7.) Thus, DOCS regularly noted periods of PRS in the records of prisoners who had not been expressly sentenced to such a term by the sentencing courts, but who nevertheless should have had such a term imposed under § 70.45's mandatory PRS provisions. (See generally Declaration of Anthony J. Annucci dated July 18, 2011 ("Annucci Decl."), ¶ 10, in support of summary judgment against Earley.)

7

B. Earley I and II

In 2000, following a plea of guilty, Earley was sentenced to six years' imprisonment. Neither prior to the entry of his guilty plea nor at his sentencing was he informed that he was subject to a term of PRS, and his commitment order did not refer to PRS conditions. DOCS administratively added a five-year period of PRS to his sentence. As detailed in Part II.D. below, after his release from prison, Earley violated the terms of his PRS and was reincarcerated. Having challenged the PRS provision unsuccessfully in state administrative and judicial proceedings, Earley sought federal habeas corpus relief on the ground that the imposition of PRS administratively by DOCS violated his due process rights. Although the district court initially denied Earley's habeas petition, this Court in Earley I concluded, applying the standard required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), that "clearly established Supreme Court precedent render[ed] the five-year PRS term added to Earley's sentence by DOCS invalid," 451 F.3d at 76.

Earley I observed that "[s]eventy years ago, the Supreme Court established that the sentence imposed by the sentencing judge is controlling; it is this sentence that constitutes the court's judgment and authorizes the custody of a defendant." Id. at 74 (citing Wampler, 298 U.S. 460). We noted that Wampler differed from Earley's case, in that the condition imposed in Wampler was discretionary, whereas "state law required that Earley be sentenced to a PRS term." Id. (emphasis added). However, we noted that Wampler had

> articulate[d] a broader holding: The judgment of the court establishes a
> defendant's sentence, and that sentence may not be increased by an
> administrator's amendment. Wampler [therefore] provides clearly established
> Supreme Court precedent supporting Earley's claim. See also Greene v.

United States, 358 U.S. 326, 329 . . . (1959) (quoting Wampler's assertion that "the only sentence known to the law is the sentence or judgment entered upon the records of the court") . . . . The only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect.

Earley I, 451 F.3d at 75 (emphases added).

Noting that "[p]ost-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody,'" id. (citing Jones v. Cunningham, 371 U.S. 236, 240-43 (1963) (parole satisfies the "in custody" requirement for habeas petitions)), we stated that

[t]he sentence imposed by the court on Earley was six years in prison. The judgment authorized the state to incarcerate him for six years and no more. Any addition to that sentence not imposed by the judge was unlawful.

Earley I, 451 F.3d at 75 (emphasis added). We concluded that "[t]he state court's determination that the addition to Earley's sentence by DOCS was permissible is therefore contrary to clearly established federal law as determined by the United States Supreme Court." Id. at 76.

We rejected the State's contention that because PRS was mandated by statute it was "necessarily part of Earley's sentence by operation of law." Id. Noting that New York law provided procedures for correcting sentences that were invalid as a matter of law and that "[t]he state . . . could have moved to correct [Earley's] sentence through a judicial proceeding, in [his] presence, before a court of competent jurisdiction," we stated that

when DOCS discovered the oversight made by Earley's sentencing judge, the proper course would have been to inform the state of the problem, not to modify the sentence unilaterally.

Earley I, 451 F.3d at 76. We thus remanded for the district court to grant Earley's habeas petition, if timely, because we "determined that New York's modification of Earley's sentence violate[d] clearly established federal law." Id. at 77.

In Earley II, we denied the State's petition for rehearing which argued that "New York law automatically includes a period of PRS in every determinate sentence," 462 F.3d at 148, and that "New York courts regularly fail to inform defendants of mandatory PRS terms but consider them part of those defendants' sentence nonetheless," id. at 150. We reiterated:

> When the sentence as imposed by the sentencing judge is purportedly altered to reflect something other than the sentence imposed, the source of that alteration is immaterial. Whether it is DOCS administrators or the operation of New York law that works the alteration, the alteration is of no effect.

Id. at 149 (emphasis added).

> The fact that New York law mandates a different sentence than the one imposed may render the sentence imposed unlawful, but it does not change it. The sentence imposed remains the sentence to be served unless and until it is lawfully modified.

Id. (emphasis added).

> Whatever conceptualization respondent-appellee has about the function of New York Penal Law sections 70.00 and 70.45, they cannot operate to undermine protections contained in the Federal Constitution. And as Wampler requires the custodial terms of sentences to be explicitly imposed by a judge, any practice to the contrary is simply unconstitutional and cannot be upheld.

Id. at 150 (emphases added).

C. The Decisions of the District Courts in the Present Actions

The Vincent/JJohnson complaints alleged, on information and belief, that the DOCS defendants knew that plaintiffs had not been sentenced by the sentencing courts to PRS. (Vincent Complaint ¶ 38; Jimmie Johnson Complaint ¶ 47.) All of the Complaints alleged that the DOCS defendants unlawfully and unconstitutionally devised and promulgated a DOCS policy of

administratively adding a five-year PRS period to prisoners' records even if the sentencing court had failed to mention PRS. (See, e.g., Vincent Complaint ¶ 41; Jimmie Johnson Complaint ¶ 50; Earley Complaint ¶ 39.) Plaintiffs alleged that the policy was maintained, supervised, and enforced by each of the defendants throughout their respective tenures as state officials. (Vincent Complaint ¶ 42; Jimmie Johnson Complaint ¶ 51; Earley Complaint ¶ 41.)

Plaintiffs alleged, on information and belief, that the Parole Division defendants likewise knew that plaintiffs had not been sentenced by the sentencing courts to PRS (see Vincent Complaint ¶ 43; Jimmie Johnson Complaint ¶ 52; Earley Complaint ¶ 42) and that those defendants "established and implemented a policy of treating" prisoners whose sentences did not include mention of PRS "as though they had been sentenced to a period of post release supervision by the sentencing court" (Vincent Complaint ¶ 44; Jimmie Johnson Complaint ¶ 53; Earley Complaint ¶ 43). They alleged that each of the Parole Division defendants enforced this policy during his tenure as the Division's Chairman and Chief Executive Officer. (Vincent Complaint ¶ 45; Jimmie Johnson Complaint ¶ 54; Earley Complaint ¶ 44).

1. Dismissal of the Vincent/JJohnson Complaints

The Vincent action and the action by Jimmie Johnson and nine other plaintiffs, filed in the Western District of New York, sought damages and declaratory relief. Defendants moved to dismiss the complaints in those actions pursuant to, inter alia, Fed. R. Civ. P. 12(b)(6), principally on the grounds that defendants had no personal involvement in the imposition of PRS on the plaintiffs, that the claims were barred by the statute of limitations, that the official-capacity claims were barred

11

by the Eleventh Amendment, and that the individual-capacity claims failed because defendants were entitled to qualified immunity. The district court consolidated the cases for purposes of its decision and granted the motions to dismiss on the ground of qualified immunity.

The court looked to "the law on this issue as it stood in and before February 2005, by which time PRS had been administratively imposed on nine of the ten plaintiffs," and held that "the unconstitutionality of DOCS' administrative imposition of PRS pursuant to Penal Law § 70.45 was far from well settled" at that time. Vincent v. Yelich, 812 F.Supp.2d 276, 279 (W.D.N.Y. 2011) ("Vincent I").

> To the contrary, in the seven years that had passed since Penal Law § 70.45's enactment, New York appellate courts had consistently and uniformly endorsed the automatic imposition of PRS by DOCS, regardless of whether PRS was ever specifically ordered by the sentencing court. . . .
>
> The issue of whether Penal Law § 70.45 created a PRS requirement that could b[e] applied only by sentencing judges . . . was not addressed at the federal level in this Circuit until June 2006. In the matter of Earley v. Murray, 451 F.3d 71 (2d Cir.2006), the Second Circuit considered the issue for the first time, and held that a term of PRS was not enforceable unless it had been pronounced by the sentencing judge on the record.

Vincent I, 812 F.Supp.2d at 279-80. "In light of the favorable state case law that existed in New York at the time," the court concluded that "a reasonable state official" would not "have been on notice that the administrative imposition of PRS violated plaintiffs' rights." Id. at 280.

The district court in Vincent I also found that qualified immunity was appropriate for the DOCS defendants' imposition of PRS terms on prisoners even after the Earley I decision, noting that "for two years after the Earley federal court case was decided, New York state courts did not always follow its holding" and that some instead held that "DOCS could still administratively mandate

12

periods of PRS pursuant to Jenna's Law, even in the absence of an explicit imposition of PRS by a sentencing judge." Vincent I, 812 F.Supp.2d at 280 (emphasis added). The court found that it was not the Earley I decision, but decisions by the New York Court of Appeals in 2008 that "established the temporal boundary of qualified immunity for DOCS officials alleged to have administratively imposed PRS." Id. at 281. The district court therefore concluded that the defendants were entitled to qualified immunity for all of plaintiffs' claims. The court did not address the other grounds asserted by defendants for dismissal.

## 2. Dismissal of Earley's Complaint

In Earley's case, brought in the Northern District of New York, defendants similarly moved to dismiss Earley's complaint pursuant to Rules 12(b)(1) and (6) arguing principally that Earley's official-capacity claims were barred by the Eleventh Amendment and that the defendants were entitled to qualified immunity from the individual-capacity claims. The district court referred the motion to a magistrate judge for report and recommendation. As defendants attached documents to their motion to dismiss, the magistrate judge converted the motion to one for summary judgment.

The magistrate judge recommended that the district court grant summary judgment on the ground of qualified immunity because PRS was administratively imposed on Earley some six years before Earley I was decided. See Earley v. Annucci, No. 08-cv-669, 2011 WL 7112917, at *7 (N.D.N.Y. Dec. 28, 2011). The magistrate judge also recommended that qualified immunity be recognized with respect to Earley's claim that DOCS should have removed his PRS term in the wake of Earley I. The magistrate judge noted that "DOCS had no authority nor affirmative legal duty, much

13

less a clearly established one, to seek" to have a defendant resentenced, or to "unilaterally revoke the PRS" it had administratively imposed, until the law was changed in June 2008. 2011 WL 7112917, at *7; see N.Y. Corr. Law § 601-d (McKinney Supp. 2012) (imposing an affirmative duty on the part of DOCS officials to notify sentencing courts of persons who were not sentenced to PRS terms but who should have been so sentenced under § 70.45).

The district court accepted the magistrate's report and recommendation, and granted summary judgment to the defendants. See Earley v. Annucci, No. 08-cv-669, 2012 WL 264210 (N.D.N.Y. Jan. 30, 2012).

II. DISCUSSION

On appeal, plaintiffs contend principally that the district court erred in ruling that defendants are entitled to qualified immunity with respect to the administrative imposition and enforcement of PRS terms against plaintiffs, arguing that the right not to have any postrelease supervision imposed except by a judge was clearly established by Wampler in 1936, and that Earley I "stands as the law of this Circuit that Wampler established the unconstitutionality of any administrative enhancement of a criminal sentence beyond what the sentencing court pronounced" (Vincent/JJohnson brief on appeal at 19; Earley brief on appeal at 21). For the reasons that follow, we reject these characterizations of both Wampler and Earley I; however, we conclude that Earley I itself, in June 2006, clearly established that the administrative imposition of PRS terms not imposed by the court is unconstitutional. We conclude further, that as to Annucci--the only defendant

14

discussed in plaintiffs' briefs on appeal--the dismissals as a matter of law on the basis of qualified immunity on the present record were inappropriate.

A. Principles of Qualified Immunity

Qualified immunity, an affirmative defense on which the defendant officials bear the burden of proof, see, e.g., Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); Sudler v. City of New York, 689 F.3d 159, 174 (2d Cir. 2012) ("Sudler"), "protects public officials performing discretionary functions from personal liability in a civil suit for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" Lore v. City of Syracuse, 670 F.3d 127, 162 (2d Cir. 2012) (quoting Harlow, 457 U.S. at 818).

1. An Objective Standard

A public official, when sued in his individual capacity, is entitled to qualified immunity from a claim for damages (1) if the conduct attributed to him was not prohibited by federal law, see, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Siegert v. Gilley, 500 U.S. 226, 232 (1991); or (2) where that official action was so prohibited, if the plaintiff's right not to be subjected to such action was not "'clearly established' at the time it was taken," Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Harlow, 457 U.S. at 818). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Jackler v. Byrne, 658 F.3d 225, 242 (2d Cir. 2011) (quoting Anderson, 483 U.S. at 640), cert. denied, 132 S. Ct. 1634 (2012).

15

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986) (emphasis added). But the inquiry "turn[s] primarily on objective factors": Absent "extraordinary circumstances," "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19.

Because the immunity not only protects against a judgment for damages but also "is in part an entitlement not to be forced to litigate," Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985) ("Forsyth"), early resolution of the qualified immunity defense is encouraged, see, e.g., Harlow, 457 U.S. at 817-18. Where the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6), a decision that we review de novo, accepting as true all material allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiff. See, e.g., Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010) ("Scott"); see generally Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Where there are no genuinely disputed factual issues material to the qualified immunity defense, a defendant may move for summary judgment dismissing the plaintiff's claim on that basis. See, e.g., Forsyth, 472 U.S. at 526. On appeal from a grant of summary judgment, we review the record de novo, viewing it in the light most favorable to the plaintiff, and drawing all reasonable inferences in his favor.

2. When the Right at Issue Here Became Clearly Established

Plaintiffs urge us to rule that the right not to be subjected to PRS without having that punishment imposed by the court was established by Wampler. (See Vincent/JJohnson brief on

16

appeal at 19, 21-24; Earley brief on appeal at 20-21, 22-26.) That contention is foreclosed, however, by prior decisions of this Court. As discussed in Part I.B. above, Earley I dealt with the AEDPA principle that a federal court may not grant habeas unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). It was in that context that Earley I ruled that the federal-law principle that punishment for a crime could not properly be imposed administratively but could only be imposed by the court had been clearly established by the United States Supreme Court in Wampler, see Earley I, 451 F.3d at 75-76. That AEDPA question is not the same as whether a federal right is clearly established for purposes of denying an official qualified immunity: The conclusion that a "legal proposition was 'clearly established' for purposes of its application by professional state court judges does not require a conclusion that it was 'clearly established' in the qualified immunity context, which governs the conduct of government officials who are likely neither lawyers nor legal scholars." Scott, 616 F.3d at 106. We thus ruled in Scott that Earley I's holding did not mean that the Wampler principle that there was a right not to be subjected to administratively imposed PRS was clearly established for purposes of qualified immunity, Scott, 616 F.3d at 106-07. (Indeed, most of the plaintiffs recognize that Earley I "did not address whether the plaintiff's rights were 'clearly established' for purposes of the qualified immunity defense" (Vincent/JJohnson brief on appeal at 19-20 n.12).) Scott went on to hold also that Wampler itself neither clearly established that right nor was a clear harbinger of that right. See Scott, 616 F.3d at 107; see also Sudler, 689 F.3d at 175 ("We see no reason why Wampler, a seventy-year-old case that does not on its face mention the Constitution, could have given the [Sudler defendants] notice that

17

administrative alteration of a sentence is in violation of an inmate's due process rights, any more than it could have given the defendants in Scott notice of the same."). Scott and Sudler are the law of this Circuit, and a panel of the Court has no authority to overrule them. See, e.g., Piesco v. Koch, 12 F.3d 332, 345 (2d Cir. 1993); Howe v. Commissioner, 814 F.2d 98, 101 (2d Cir.), cert. denied, 484 U.S. 895 (1987).

Earley I itself, however, in dealing with the precise conduct at issue in the present cases--the administrative imposition of PRS on a prisoner who has not had that condition imposed on him by the sentencing court--applied Wampler and plainly held such an imposition of PRS to be unconstitutional. We inferred in Earley I that the principles announced in Wampler were "based in the due process guarantees of the United States Constitution," Earley I, 451 F.3d at 76 n.1; see also Earley II, 462 F.3d at 148 ("adher[ing] to our view that the inclusion of . . . PRS in Earley's sentence when that PRS was not included in the sentence imposed at Earley's sentencing hearing violated his rights under the Due Process Clause of the United States Constitution"). Although we noted in Earley I that "state law required that Earley be sentenced to a PRS term," 451 F.3d at 74, we held that, as stated in Wampler, it is "[t]he judgment of the court [that] establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment," Earley I, 451 F.3d at 75 (emphasis added). We stated that

> [i]f, as in Wampler, an erroneous order of commitment prepared by the clerk of court with the court's knowledge cannot alter the sentence imposed by the court, then plainly a later addition to the sentence by an employee of the executive branch cannot do it. Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty.

Id. (emphasis added).

18

Thus, having noted that Earley's PRS term had been "administratively added" by DOCS rather than imposed by the court, id. at 72-73, the Earley I court stated that "[t]he sentence imposed by the court on Earley was six years in prison. The judgment authorized the state to incarcerate him for six years and no more. Any addition to that sentence not imposed by the judge was unlawful," id. at 75 (emphasis added); see also id. at 76 (holding "the five-year PRS term added to Earley's sentence by DOCS invalid"); id. ("The state court's determination that the addition to Earley's sentence by DOCS was permissible is therefore [within the meaning of AEDPA] contrary to clearly established federal law . . . .").

We conclude that Earley I itself clearly established that where the court has not included PRS in a defendant's sentence, DOCS may not add that term without violating federal law.

Defendants do not--and could not plausibly--argue that Earley I itself was ambiguous or that Annucci--who was then DOCS's counsel and Deputy Commissioner--did not understand Earley I's holding when it was announced. Earley, in opposition to summary judgment, submitted to the district court a transcript of the following testimony given by Annucci in another case:

Q You were aware of the Second Circuit's decision in Earley v. Murray at the time it came out in 2006. Correct?

A Correct.

Q I would assume you did not agree with that decision?

A I think that is a safe assumption.

Q But you were aware of it?

A Yes.

Q And you were aware that the Second Circuit indicated that DOCS

19

did not have the authority to add a period of post-release supervision, if it was not included by the sentencing judge?

A  That is correct.

(State v. Myers, No. 4834-08, Sup. Ct. Albany County, N.Y., Hearing Transcript, June 6, 2008 ("Myers Tr."), at 103-04 (emphases added).)

Instead, defendants argue, as they did in the district courts, that decisions by some of the New York State courts subsequent to Earley I cast doubt on Earley I's holding.  We left unanswered in Scott "[w]hether Earley itself sufficed clearly to establish the unconstitutionality of administratively imposed PRS for a reasonable New York State correctional official" in light of decisions issued by courts of the New York Appellate Division that "thereafter continued to find the practice constitutional." Scott, 616 F.3d at 107.  Today, we answer Scott's question in the affirmative.

Some state court decisions rejected Earley I.  See People v. Edwards, No. 5588/2001, 2007 WL 969416, at *9-*14 (Sup. Ct. N.Y. Co. Mar. 21, 2007); Quinones v. State of New York Department of Corrections, 14 Misc. 3d 390, 395-96, 824 N.Y.S.2d 877, 881 (Sup. Ct. Albany Co. 2006).  Others distinguished Earley I for reasons that do not apply in the instant case.  See People v. Thomas, 35 A.D.3d 192, 193-94, 826 N.Y.S.2d 36, 38 (1st Dep't 2006), aff'd after modification sub nom. People v. Sparber, 10 N.Y.3d 457, 859 N.Y.S.2d 582 (2008) ("Sparber II"); People v. Lingle, 34 A.D.3d 287, 289-90, 825 N.Y.S.2d 12, 14-15 (1st Dep't 2006), aff'd after modification sub nom. Sparber II, 10 N.Y.3d 457, 859 N.Y.S.2d 582; People v. Sparber, 34 A.D.3d 265, 265-66, 823 N.Y.S.2d 405, 405-06 (1st Dep't 2006) ("Sparber I"), aff'd after modification, 10 N.Y.3d 457, 859 N.Y.S.2d 582.  At least one was entirely silent on the constitutional issue raised by Earley I, instead finding a challenge to the administrative imposition of PRS barred on a statutory procedural ground.

20

See Garner v. New York State Department of Correctional Services, 39 A.D.3d 1019, 1019, 831 N.Y.S.2d 923, 923 (3d Dep't 2007) ("Garner I"), rev'd, 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008) ("Garner II"). However, none of the state court decisions cited by defendants demonstrates any confusion about whether Earley I prohibited DOCS from imposing PRS.

Defendants thus provide no reason to believe that Earley I was unclear in its holding. "For a right to be 'clearly established' for purposes of qualified immunity, 'it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity.'" Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000) (quoting Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) (emphasis ours)). Our decision in Earley I did so: We stated that "New York's Department of Correctional Services has no . . . power to alter a sentence," Earley I, 451 F.3d at 76 (emphasis added).

As a general matter, "[f]ederal constitutional standards rather than state law define the requirements of procedural due process. . . . '[T]he fact that the State may have specified its own procedures that it may deem adequate for . . . official action,' . . . does not settle what protection the federal due process clause requires." Russell v. Coughlin, 910 F.2d at 78 n.1 (quoting Vitek v. Jones, 445 U.S. 480, 491 (1980)). State court decisions that rejected Earley I's holding could not disestablish the federal right to due process for the purposes of qualified immunity analysis. See, e.g., Hopkins v. Bonvicino, 573 F.3d 752, 772 (9th Cir. 2009) ("[A] decision by a state court contrary to a holding of this court cannot unsettle or 'de-establish' the clarity of federal law" because "we begin our inquiry by looking to binding precedent [and i]f the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." (emphasis in Hopkins) (other

internal quotation marks omitted)). Because Earley I's explicit ruling that "New York's Department of Correctional Services has no . . . power to alter a sentence" clearly established the contour of the right plaintiffs seek to vindicate, our inquiry ends there.

The district court in Vincent I also found qualified immunity appropriate on the ground that "'absent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute . . . until and unless the statute is declared unconstitutional,'" Vincent I, 812 F.Supp.2d at 281 (quoting Vives v. City of New York, 405 F.3d 115, 117 (2d Cir. 2005)). We agree with the principle. But that presumption cannot be relied upon once the federal court of appeals for the circuit in which the officials operate has ruled that the exact conduct of the official, undertaken on the basis of the state statute, violates federal law.

Although we note that qualified immunity may sometimes be available where a decision of the Supreme Court or this Court has announced a constitutional principle and subsequent cases have differed as to the reach of that holding, see, e.g., Safford Unified School District #1 v. Redding, 557 U.S. 364, 378-79 (2009), such instances usually involve fact patterns that differ. Here, however, the very conduct that is challenged in the present cases is the conduct that was held unconstitutional in Earley I. Indeed, it was held unconstitutional with respect to one of the present plaintiffs.

Defendants also argue that it did not become clearer to them (see Defendants' brief in Vincent/JJohnson appeal at 7 ("[s]ome of this confusion was resolved" (emphasis added)); Defendants' brief in Earley appeal at 8 (same)) that DOCS's administrative imposition of PRS was unlawful until April 2008, when the New York Court of Appeals decided Sparber II, 10 N.Y.3d 457,

22

859 N.Y.S.2d 582, and Garner II, 10 N.Y.3d 358, 859 N.Y.S.2d 590. Those cases decided that the administrative imposition of PRS was impermissible under New York law. See, e.g., Sparber II, 10 N.Y.3d at 469-71, 859 N.Y.S.2d at 587-88; see also id. at 466, 859 N.Y.S.2d at 584 (noting that "the United States Court of Appeals for the Second Circuit's decision in Earley v. Murray (451 F3d 71 [2d Cir 2006]), . . . held that DOCS's administrative addition of a PRS term not pronounced by [the] Supreme Court violated federal 'due process guarantees' (id. at 76 n 1)").

The fact that it was not until 2008 that the New York Court of Appeals declared the administrative imposition of PRS on prisoners who had not been so sentenced judicially to be unlawful under State law, however, did not affect the invalidity of such impositions under federal law, which was announced in Earley I in 2006. State and local officials are required to comply not just with state law but with federal law as well.

B.  Plaintiffs' Arguments With Regard to Annucci

Defendants also argue that this Court in Scott, and in other cases following Scott that were decided by summary order, "confirmed state officials' entitlement to qualified immunity for claims of wrongful confinement following the improper imposition of PRS" (e.g., Defendants' brief in Vincent/JJohnson appeal at 15; see id. at 15-16). We reject the contention that Scott's affirmance of the qualified-immunity-based dismissal in that case is controlling in the present cases, for insofar as the qualified immunity defense is concerned, the factual allegations in the present cases are significantly different from those in Scott, at least as to claims against Annucci.

23

First, in Scott the complaint itself did not assert that DOCS failed to relieve Scott of the PRS conditions imposed on her in 2002 or to remove PRS from her record. Rather, we noted that

> [t]he only allegation contained in the complaint that addresses the DOC defendants' purportedly unconstitutional actions with respect to Scott's PRS is that they "adopted, approved, and/or ratified the imposition of mandatory [PRS] on individuals such as plaintiff sentenced to determinate terms of imprisonment in New York State courts but not sentenced to mandatory [PRS]." Compl. ¶ 16.

Scott, 616 F.3d at 108 (emphases added). We stated that, even read "liberally . . . the challenge is directed at the administrative imposition of PRS, not the failure to take action to remove it after it was imposed." Id. As to the one claim asserted in the Scott complaint, qualified immunity was appropriate because DOCS's practice of administratively imposing PRS began shortly after enactment of the PRS statute in 1998; PRS was imposed on Scott in 2002, see id. at 103; and, as discussed in Part II.A.2. above, the unlawfulness of DOCS's administrative imposition of PRS was not clearly established before the issuance of our 2006 decision in Earley I, see Scott, 616 F.3d at 107.

The Complaints in the present cases--although flawed as was Scott in their challenges to the pre-Earley I adoption of the DOCS policy--differ from Scott in that they challenged the enforcement of administratively imposed PRS (see, e.g., Vincent Complaint ¶¶ 67, 70; Jimmie Johnson Complaint ¶¶ 239, 242; Earley Complaint ¶¶ 126, 129).

Second, Scott went on to consider an assertion that was made only in opposition to the motion to dismiss and not in the complaint, i.e., that the DOCS defendants had violated Scott's due process rights by not taking action to release her from custody after she was returned to prison for PRS violations, see 616 F.3d at 110. However, the Scott court noted that there were no allegations in the complaint that "would support a conclusion that the defendants were deliberately indifferent

24

to known violations of Scott's rights"; indeed, Scott's complaint did not even "assert that the DOC defendants themselves knew whether her PRS had been imposed administratively or judicially." Id. at 110-11.

Here, in contrast to the complaint in Scott, the Complaints alleged that defendants "knew" that plaintiffs "had not been sentenced" to PRS "by the sentencing court." (E.g., Vincent Complaint ¶ 43; Jimmie Johnson Complaint ¶ 52.) Plaintiffs here also allege that defendants have continued, "beyond the scope of their authority" (Vincent Complaint ¶¶ 69, 75, 81; Jimmie Johnson Complaint ¶¶ 241, 247, 253; Earley Complaint ¶¶ 111, 119, 128, 136; see also Earley Complaint ¶ 86 (citing Earley I)), to "enforc[e]" DOCS-imposed PRS while "knowing[]" that enforcement "deprive[s] plaintiff of rights secured by the Fifth . . . and Fourteenth Amendments to the United States Constitution" (Vincent Complaint ¶¶ 67, 70; see Jimmie Johnson Complaint ¶ 239, 242; Earley Complaint ¶¶ 126, 129; see, e.g., Jimmie Johnson Complaint ¶¶ 67, 100, 179, 196 (alleging enforcement against various plaintiffs in 2007)).

The most glaring difference between Scott and the present cases, however, is simply that in Scott, Annucci was not a defendant. In contrast, all of the present Complaints named Annucci as one of the defendants; and all of the present Complaints focused principally on Annucci's role as DOCS's legal counsel and alleged that he "has been and continues to be responsible for . . . ensuring that Department of Correctional Services personnel obey the Constitution and laws of the United States." (Vincent Complaint ¶ 13; Jimmie Johnson Complaint ¶ 20; Earley Complaint ¶ 9.) Further, the record, even as modestly developed as it was before the dismissal of Earley's complaint, contains supporting information as to Annucci's relevant responsibilities. In the State v. Myers transcript

25

submitted to the district court by Earley, Annucci testified: "[I]n my capacity as the head of counsel's office I am responsible for all of the legal services necessary for the day-to-day operation of the State Prison system" (Myers Tr. 75; see also Annucci Decl. ¶ 2). In a 2009 DOCS press release submitted to the district court by Earley, DOCS described Annucci as having "served as the agency's chief legal advisor" since 1989 and as "coordinat[or of] the work of the entire agency with respect to intergovernmental, legislative and various operational and program issues." (Declaration of K. Wade Eaton dated June 20, 2011, Exhibit A ("DOCS Press Release") at 2.)

Although Scott concluded with respect to the defendants sued in that case that there was no pleaded basis on which to rule that Earley I obligated any of those defendants "unilaterally" to revoke Scott's PRS, Scott, 616 F.3d at 109, we read Earley I as affording the State two alternatives. Our Earley I ruling, in consequence of our conclusion that the administrative imposition of PRS by DOCS was unconstitutional, was that if Earley's habeas corpus petition was timely, "the term of post-release supervision" must be "excis[ed] . . . from Earley's sentence," and Earley must be "reliev[ed] . . . of any subsequent penalty or other consequence of its imposition," 451 F.3d at 77 (emphases added); but we added that nothing in our ruling barred the State from, instead, having Earley resentenced by a court to include the mandatory PRS conditions, see id. In sum, Earley, who was then in prison for violating the administratively imposed PRS terms, see id. at 75, was entitled, unless he was resentenced, to be released from DOCS's custody.

We think it clear from these alternatives that, with respect to persons on whom PRS had been imposed administratively, the State was required either to have them resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from

26

their records and relieve them of those conditions. Indeed, on remand from Earley I, the district court, after finding Earley's habeas petition timely, ordered the required habeas relief, but stayed the judgment for a period of time in order to permit the state court to rectify the constitutional violation by conforming Earley's sentence to the requirements of New York's PRS statute. See Earley v. Murray, No. 03-CV-3104, 2007 WL 1288031, at *3 (E.D.N.Y. May 1, 2007).

While we do not suggest that agencies other than DOCS, such as District Attorneys' offices, could not seek to have the courts conduct such a permissible resentencing, we think it clear that DOCS, which (a) unconstitutionally imposed PRS, (b) was custodian of the records in which PRS was imposed and from which PRS was required to be excised (in the absence of appropriate resentencing), and (c) resumed custody of persons who violated the unconstitutionally imposed conditions and were penalized for those violations by reimprisonment, had an obligation to at least attempt to cease its administrative and custodial operations that had been held to violate federal law.

As Annucci was "coordinat[or of] the work of the entire [DOCS] agency with respect to intergovernmental . . . issues" (DOCS Press Release at 2), it appears to be among his duties to seek a resolution of the PRS issues among DOCS, the prosecutors, and the courts by attempting, through direct or indirect communication with the courts, to have persons who should, under New York substantive law, have had PRS imposed as part of their sentences, resentenced by the court in order to impose those terms in compliance with the due process required by the Constitution of the United States.

The present record does not indicate that Annucci took prompt action in light of Earley I to end its custody of persons who were being unconstitutionally punished for violating PRS

27

terms administratively imposed by DOCS. The allegations of the present Complaints, taken as true, show that these 12 plaintiffs had PRS imposed on them administratively by DOCS. And, as set out in Part II.D. below, at least half of these plaintiffs, as punishment for PRS-condition violations, were reimprisoned after the decision in Earley I. It is unclear whether Annucci had any cognizable responsibility for ordering their reimprisonment, since "the practice of re-incarcerating persons who violated their administratively-imposed PRS was a practice of the Division of Parole, and not of DOC[S]," Scott, 616 F.3d at 110. But as punishment for their PRS violations they were returned to the custody of DOCS. And in Earley I, without regard to whether DOCS had any participation in the parole revocation proceedings for alleged violation of PRS conditions, we ruled that DOCS's ensuing custody of Earley for such violations was unlawful.

A supervisory official may be liable in an action brought under § 1983 if he "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (emphasis added); see, e.g., Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("supervisory official may be liable" where he knowingly "allowed such a policy or custom to continue"). Qualified immunity is not available to "those who knowingly violate the law." Malley v. Briggs, 475 U.S. at 341.

As set out in Part II.A.2. above, Annucci testified in State v. Myers that he was "aware of the Second Circuit's decision in Earley v. Murray at the time it came out in 2006," that he was aware that Earley I ruled "that DOCS did not have the authority to add a period of post-release supervision, if it was not included by the sentencing judge," and that he "did not agree with that decision" (Myers Tr. 103-04). Annucci testified that, "at that time in 2006" he "did not begin a resentencing initiative." (Id. at 104 (emphases added).)

28

Indeed, it is not clear that at that time Annucci instructed DOCS employees even to cease adding PRS to sentences that were silent as to PRS. The allegations of the Jimmie Johnson complaint, accepted as true, indicate that DOCS did not in fact cease that practice in light of the decision in Earley I in June 2006: DOCS administratively imposed PRS on Jimmie Johnson in June 2007. (See Jimmie Johnson Complaint ¶¶ 64-65.)

We conclude that in these actions, as the record stands, given our conclusion that Earley I clearly established that DOCS violated federal law in adding PRS terms to the sentences of prisoners who had not received such terms from the court, the district courts erred in ruling that Annucci was entitled to qualified immunity as a matter of law.

That said, we note Annucci also testified in the Myers case that, while he did not begin a resentencing initiative immediately after the decision in Earley I,

> sometime thereafter I began an initiative with the Office of Court Administration asking them going forward to put out an instruction to all judges in the State that the good practice would be whenever a determinate sentence of imprisonment was imposed, they should announce the period of post-release supervision on the record.

(Myers Tr. 104 (emphases added).) While that initiative, as Annucci described it, looked only "forward," Annucci also testified that in early 2007, DOCS conducted a study "to identify every individual in [DOCS's] custody who required PRS, but for whom the commitment was silent" (id. at 93). So far as we have seen, however, the record does not indicate what action, if any, DOCS took after identifying those individuals. It is possible that behind these statements may lie concrete evidence that could establish that Annucci made reasonable efforts either to seek resentencing of such persons or to end their unconstitutional imprisonment and excise PRS from their prison records. But,

29

as set out in Part II.D. below, the Complaints suggest that DOCS had custody of several of the plaintiffs at least through 2007. The record as it stands thus leaves it unclear as to when--or whether-- DOCS began to urge resentencing of prisoners whose PRS terms had been administratively imposed and who had been reimprisoned for violating those terms. And it is silent as to when--or whether-- DOCS ceased its practice of administratively imposing PRS on prisoners who had not been sentenced to PRS terms by the court.

Plainly, the record in the Vincent and Jimmie Johnson cases has not been developed, the court having dismissed those complaints pursuant to Rule 12(b)(6). And the record was only slightly more developed in the Earley case; the court converted the Rule 12(b)(6) motion into one for summary judgment, but apparently no discovery had been conducted. Focused discovery in the present cases may well reveal facts material to the qualified immunity inquiry, and we cannot determine at this stage whether or not Annucci will eventually be entitled to such immunity.

C.  Defendants Other Than Annucci

Plaintiffs' briefs on appeal do not discuss any defendant other than Annucci. Although there are occasional group references to "DOCS" or "appellees," all of plaintiffs' factual assertions and challenges to the district courts' rulings focus solely on Annucci. (See, e.g., Vincent/JJohnson brief on appeal at 12 (urging "this Court to review de novo [the] claim that appellee Annucci acted not only in violation of the United States Constitution, but also irresponsibly, when he authorized and implemented the practice of administratively imposing periods of post-release supervision on inmates, where the sentencing judge had omitted such a provision in the inmate's sentence" (emphases added));

30

Earley brief on appeal at 12 (same); Vincent/JJohnson brief on appeal at 33 ("[t]he decision of the District Court should be reversed and the matter remanded with instructions to deny appellee Annucci's motion to dismiss" (emphasis added)); Earley brief on appeal at 35 ("[t]he decision of the district court should be reversed and the matter remanded with direction to deny the application of Anthony Annucci for qualified immunity" (emphasis added)).)

The Federal Rules of Appellate Procedure require that an appellant's brief on appeal contain the party's contentions and "the reasons for them, with citations to the authorities." Fed. R. App. P. 28(a)(9)(A). Where those requirements have not been met--or where contentions have been made only perfunctorily--we normally decline to entertain them. See, e.g., Lore v. City of Syracuse, 670 F.3d at 171-72; Jackler v. Byrne, 658 F.3d at 233; Day v. Morgenthau, 909 F.2d 75, 76 (2d Cir. 1990).

We see no reason to deviate from that practice here. Defendants, in their responding appellate briefs, pointed out that plaintiffs had not advanced arguments as to any defendant other than Annucci. (See, e.g., Defendants' brief in Vincent/JJohnson appeal at 3; id. at 15 ("By their brief, [plaintiffs] have effectively limited their appeal to challenging only so much of the district court's decision as refused to treat defendant Annucci differently from the other" officials.); Defendants' brief in Earley appeal at 3, 13-14.) Plaintiffs' reply briefs neither disputed that characterization of their arguments nor requested permission to add new arguments as to any other defendants. They simply reiterated their requests for reversal as to Annucci.

Plaintiffs' appellate briefs ask that plaintiffs be allowed to conduct "discovery concerning the other defendants' entitlement to qualified immunity." (Vincent/JJohnson brief on

31

appeal at 33; see also id. at 30; id. at 2 ("discovery concerning whether each defendant acted as a reasonable person in his or her position would have acted"); Earley brief on appeal at 2 (same).) But these requests are unaccompanied by references to anything in the record to show that the district judges abused their discretion in not delaying decision until plaintiffs conducted discovery.

In sum, plaintiffs' have not made any arguments with respect to defendants other than Annucci and have provided us with no basis for reversing the district courts' rulings that defendants other than Annucci are entitled to qualified immunity from plaintiffs' claims for damages.

D. The Facts Alleged as to Each Plaintiff

The Complaints alleged that each of the plaintiffs pleaded guilty to a felony under New York law; that none of the plaintiffs was informed by the sentencing judge that he was subject to a PRS term; that none of the plaintiffs' commitment orders mentioned a PRS term; and that each plaintiff was subjected to a PRS term administratively imposed by DOCS. Only one of the plaintiffs, however, had PRS conditions imposed on him after our June 2006 decision in Earley I: PRS was imposed on Jimmie Johnson by DOCS upon his release from prison in June 2007. His parole was revoked three days later, and he was returned to prison. There is nothing in the record to indicate that Annucci has established his entitlement to qualified immunity against the claim for damages by Jimmie Johnson.

Most of the other plaintiffs, although having PRS terms imposed on them prior to June 2006, alleged that they suffered the consequences of PRS even following our decision in Earley I-- principally in having their release (referred here to as "parole") revoked for violations of various PRS

terms and being returned to prison. The PRS-related allegations as to those plaintiffs were as follows.

Vincent was subjected to PRS upon his release from prison in January 2005. His parole was revoked first in October 2005; after he served additional prison time and was released, his parole was revoked again in April 2007, and he was returned to prison.

Plaintiff Seneca Robinson was subjected to PRS upon his release from prison in January 2004. His parole was revoked first in September 2004; after he served additional time and was released, his parole was revoked again in August 2005. He remained incarcerated for the latter PRS violation until August 2006; he remained subject to PRS until August 2009.

Plaintiff Gary St. Mary was subjected to PRS upon his release from prison in October 2003. His parole was revoked in October 2007 and he was returned to prison.

Plaintiff Walter Eades was subjected to PRS upon his release from prison in May 2003. His PRS term was scheduled to expire in September 2008.

Plaintiff Reginald Johnson was subjected to PRS upon his release from prison in March 2002. His parole was revoked first in June 2002, second in January 2003, third in March 2004, and fourth in April 2006. His PRS term was scheduled to expire in March 2007. He remained incarcerated for his 2006 PRS violation until August 2008, when a State court granted habeas requiring his release.

Plaintiff Donald I. McLean, Jr., was subjected to PRS upon his release from prison in June 2004. His PRS term was scheduled to expire in June 2009.

Plaintiff Jeffrey Palmer was subjected to PRS upon his release from prison in February 2005. His parole was revoked first in August 2005, second in March 2006, and third in July 2007. He remained imprisoned for his third PRS violation until September 2008.

Plaintiff Wayne B. Wright, Jr., was subjected to PRS upon his release from prison in January 2003. His parole was revoked first in July 2004; after he served additional prison time and was released, his parole was revoked again in June 2007, and he was again returned to prison.

Plaintiff Shawn Goodman was subjected to PRS upon his release from prison in December 2003. His PRS term was scheduled to expire in December 2008.

Plaintiff David Waddell was subjected to PRS upon his release from prison in September 2004. His parole was revoked first in October 2006; after he served additional time and was released, his parole was revoked again in June 2008, and he was again returned to prison.

Earley was subjected to PRS upon his release from prison in 2004. His parole was revoked first in July 2005; after he served additional prison time and was released, his parole was revoked again for PRS violations in September 2006--after Earley I had been decided--and he was again returned to prison. Eventually, having successfully pursued federal habeas relief as discussed in Part I.B. above, Earley was released from prison in June 2007.

As indicated above, Jimmie Johnson, who was subjected to PRS by DOCS in June 2007, is the only plaintiff alleged to have had those conditions imposed on him subsequent to our decision in Earley I. The record remains to be developed as to whether Annucci, who was then "responsible for all of the legal services necessary for the day-to-day operations of the entire correctional system in the State of New York" (Annucci Decl. ¶ 2), made reasonable efforts to have DOCS comply with federal law or whether he unreasonably allowed the DOCS policy or custom to be applied to Jimmie Johnson.

Six other plaintiffs (Vincent, St. Mary, Palmer, Wright, Waddell, and Earley) were found to have committed various violations of PRS and had their parole revoked after Earley I was

34

decided. They were returned to DOCS's custody for various periods. The remaining five plaintiffs (i.e., Robinson and Reginald Johnson, whose last alleged reimprisonments for PRS violations began prior to Earley I but continued after Earley I, and Eades, McLean, and Goodman, who did not allege that they were punished for PRS violations) alleged that the periods during which they were required to comply with the unlawfully imposed PRS conditions extended years past the decision of Earley I. "In addition to supervision by and reporting to a parole officer, postrelease supervision may require . . . for example, a curfew, restrictions on travel, and substance abuse testing and treatment." Catu, 4 N.Y.3d at 245, 792 N.Y.S.2d at 888.

We conclude that with respect to all of the plaintiffs, whether their paroles were revoked after Earley I for violation of PRS conditions or their conduct was merely constrained after Earley I by those conditions, the record remains to be developed as to the objective reasonableness of Annucci's efforts to relieve them of the burdens of those unlawfully imposed terms after he knew it had been ruled that the imposition violated federal law.

E. Other Claims or Contentions

Although the district courts dismissed the Earley and Vincent/Jimmie Johnson actions on the basis of qualified immunity, defendants had moved to dismiss on several other grounds as well. These included (1) jurisdictional challenges to claims asserted against them in their official capacities, as such claims are in essence suits against the governmental entities themselves, and suits against the State under § 1983 are barred by sovereign immunity, see, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991); (2) claims that the defendants--including Annucci--lacked personal involvement in the development, imposition, and enforcement, etc., of PRS; and (3) the statute of limitations. Aside from

35

the observation that the Vincent/Jimmie Johnson plaintiffs had withdrawn their official-capacity claims, see Vincent I, 812 F.Supp.2d at 278 n.1, the district courts did not address these alternative grounds for dismissal. Although plaintiffs have included in their appellate briefs arguments that their claims are timely, we decline to address that issue since the district courts did not reach it. We leave it to the district courts in the first instance to address the merits of any such unresolved issues should they be raised again by Annucci.

We note also that the complaints in the Vincent and Jimmie Johnson actions sought declaratory judgments. Although the sole basis for the district court's dismissal of the actions was qualified immunity, qualified immunity does not protect a public official against a claim for declaratory or injunctive relief, see, e.g., Sudler, 689 F.3d at 177; Adler v. Pataki, 185 F.3d 35, 48 (2d Cir. 1999). However, there being no allegations in the Complaints that any of the plaintiffs remain subject to PRS terms, and the New York Legislature having amended § 70.45 in 2008 to require that the mandated PRS terms be imposed by sentencing judges, it seems likely that any claims for declaratory relief have become moot. In any event, plaintiffs on appeal have characterized their suits solely as "civil action[s] seeking money damages for violation of [their] rights" (Vincent/JJohnson brief on appeal at 1; Earley brief on appeal at 1-2), and they do not argue that their claims for declaratory relief should be reinstated. We deem any claims for declaratory relief to have been abandoned.

CONCLUSION

We have considered all of the arguments made by both sides in support of their respective positions and, except as indicated above, have found them to be without merit. For the reasons stated above, we affirm so much of the judgments of the respective district courts as dismissed plaintiffs' claims against defendants other than Annucci. We conclude that on the present record Annucci was not entitled to qualified immunity. To the extent that the judgments dismissed the Complaints against Annucci, they are vacated, and the matters are remanded for further proceedings. We express no view as to whether qualified immunity may be appropriate for Annucci after the record is developed.

No costs.