17-1970- cv
Reyes v. Fischer

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2017

Argued:  May 9, 2018        Decided: August 9, 2019

Docket No. 17-1970-cv

_____

CIARA REYES, AKA SHEILA RIVERA,

*Plaintiff–Appellee,*

—v.—

BRIAN FISCHER, FORMER COMMISSIONER OF NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, IN HIS INDIVIDUAL CAPACITY, ANTHONY J. ANNUCCI, ACTING COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, FORMER EXECUTIVE DEPUTY COMMISSIONER, DEPUTY COMMISSIONER, AND COUNSEL OF NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, IN HIS INDIVIDUAL CAPACITY, TERRENCE X. TRACY, CHIEF COUNSEL FOR NEW YORK STATE DIVISION OF PAROLE, IN HIS INDIVIDUAL CAPACITY,

*Defendants-Appellants,*

UNITED STATES MARSHALS SERVICE, NEW YORK STATE DIVISION OF PAROLE, ONI PENZARVIS, COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, MRS. WILLIAMS, SUPERINTENDENT, OF BEDFORD HILLS CORRECTIONAL FACILITY FOR WOMEN, JOHN AND JANE DOES 1-20, NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES SUPERVISORY, TRAINING, AND POLICY PERSONNEL; NEW YORK STATE DIVISION OF PAROLE SUPERVISORY,

TRAINING, AND POLICY PERSONNEL; NEW YORK STATE BOARD OF PAROLE SUPERVISORY, TRAINING, AND POLICY PERSONNEL, IN THEIR INDIVIDUAL CAPACITY,

*Defendants.*

_____

Before: HALL AND CARNEY, <u>Circuit Judges</u>, and KOELTL, <u>District Judge</u>.[*]

The defendants appeal from an order of the United States District Court for the Eastern District of New York (Donnelly, J.) finding that the defendants violated the constitutional right of the plaintiff, Ciara Reyes, to due process by administratively imposing a period of post-release supervision ("PRS") and that the defendants were not entitled to qualified immunity.

As to the period of PRS that Reyes served from the expiration of her determinate sentences on November 27, 2008, until her judicial resentencing on December 5, 2008, we agree with the district court that the defendants deprived Reyes of her clearly established due process right to be free from administratively imposed PRS and that the defendants are not entitled to qualified immunity for that period. Accordingly, we **AFFIRM** the district court's order for that time period.

---

[*] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

As to the period of PRS that Reyes served from her initial release from prison on October 5, 2007, until her determinate sentences expired on November 27, 2008, there are material issues of fact as to whether that period of PRS was more onerous than the period of conditional release Reyes would have been subjected to without PRS and consequently whether Reyes was deprived of a liberty interest during that period. We therefore lack jurisdiction to determine whether the defendants are entitled to qualified immunity for their roles in subjecting Reyes to PRS during that period. Accordingly, with respect to the period of PRS imposed on Reyes from October 5, 2007, until November 27, 2008, we **DISMISS** the appeal for lack of jurisdiction and **REMAND** for further proceedings.

Judge Hall concurs in part and dissents in part in a separate opinion.

_____

THOMAS ROSS HOOPER, (Andrew S. Jacobson on the brief), Seward & Kissel LLP, New York, N.Y. for plaintiffs-appellants.

ERIC DEL POZO, Assistant Solicitor General, (Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, on the brief), New York, N.Y., for Letitia James, Attorney General of the State of New York.

_____

John G. Koeltl, District Judge:

Plaintiff-appellee Ciara Reyes brought this action under 42 U.S.C. § 1983 alleging that her constitutional right to due process was violated when the defendants required her to serve an administratively imposed term of post-release supervision ("PRS") following her release from imprisonment after serving six-sevenths of two concurrent eight-year determinate sentences. The defendants-appellants Brian Fischer, the former Commissioner of the New York State Department of Correctional Services ("DOCS"); Anthony J. Annucci, the former Deputy Commissioner of DOCS; and Terrence X. Tracy, the former Chief Counsel for the New York State Division of Parole ("DOP"), bring this interlocutory appeal from the district court's order denying the defendants' motion for summary judgment on qualified immunity grounds and finding the defendants liable for violating Reyes's constitutional due process rights.

This appeal requires us to consider whether the defendants are entitled to qualified immunity for administratively imposing PRS prior to a judicial imposition of such supervision. More specifically, the appeal addresses whether the defendants are entitled to qualified immunity for two periods: the period of PRS before the conclusion of a determinate sentence when a plaintiff would otherwise be on conditional release, and the period following the end of a

4

determinate sentence before a judicially imposed period of PRS when a plaintiff would not otherwise have been under supervision.

## BACKGROUND

### A.

In 1998, the New York State legislature enacted Penal Law § 70.45, which eliminated the parole system and provided that "[e]ach determinate sentence also includes, as a part therefor, an additional period of post-release supervision." Penal Law § 70.45(1) (McKinney 2005), amended by 2008 N.Y. Laws Ch. 141, § 3 (codified at N.Y. Penal Law § 70.45(1) (2009)). Under that provision, the period of PRS to follow most offenses was five years. Id. § 70.45(2). Although § 70.45 required that PRS terms follow determinate prison sentences, in the years after the statute's enactment, "many judges did not include PRS as part of the sentence imposed." Betances v. Fischer, 304 F.R.D. 416, 423 (S.D.N.Y. 2015). Between the years 1998 and 2008, when offenders did not receive a judicially pronounced term of PRS, DOCS unilaterally calculated and imposed PRS terms without consulting the sentencing judge.[1] Id.

---

[1] For a detailed history of DOCS's practice of administratively imposing PRS terms, see Betances v. Fischer, 837 F.3d 162, 164-71 (2d Cir. 2016).

This Court first addressed the constitutionality of administratively imposed PRS terms in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006) ("Earley I"), reh'g denied, 462 F.3d 147 (2d Cir. 2006) ("Earley II"). Earley I involved a prisoner who, while serving his sentence, learned that DOCS had added a period of PRS to his judicially pronounced determinate sentence. Id. at 73. Earley I held that administratively imposing PRS terms that were not judicially pronounced violates due process. Id. at 76 & n.1. This Court held that in cases where a PRS term was not judicially pronounced, the defendants had two options: "either to have [the offenders] resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from their records and relieve [the offenders] of those conditions." Vincent v. Yelich, 718 F.3d 157, 172 (2d Cir. 2013).

The defendants have appeared before this Court many times regarding their imposition of PRS, and their deliberate refusal to follow Earley I's holding is well documented. See, e.g., Hassell v. Fischer, 879 F.3d 41, 49 & n.15 (2d Cir. 2018) (noting that Fischer, Annucci, and Tracy understood Earley I's holding but decided not to follow it for many months); Betances v. Fischer, 837 F.3d 162, 167-68 (2d Cir. 2016) (same); Vincent, 718 F.3d at 168-69 (discussing Annucci).

6

Defendants Fischer, Annucci, and Tracy each understood the holding of Earley I, and that it "applied to their departments" "but deliberately refused to" comply. Betances, 837 F.3d at 167-68. The defendants waited "to implement Earley I for many months after that decision was rendered." Hassell, 879 F.3d at 49.

In June 2008, the New York State Legislature passed Correction Law § 601-d to address the problem of DOCS's imposition of PRS terms that had not been pronounced by the sentencing judge. Section 601-d requires DOCS to notify the sentencing court of cases where the commitment order does not contain a term of PRS -- a signal to DOCS that PRS likely had not been judicially pronounced. N.Y. Correct. Law § 601-d(1), (2). When the sentencing court receives such notice from DOCS, § 601-d allows the court to hold a new hearing and impose a term of PRS, although it is not required to do so. See § 601-d(5).

## B.

In 2001, Reyes was convicted of a violent assault and robbery, for which she received two concurrent eight-year determinate prison sentences. The sentencing judge pronounced Reyes's determinate sentences orally. The sentencing judge did not pronounce a term of PRS, nor was a term of PRS included in Reyes's Sentence and Order of Commitment.

In September 2007, DOCS calculated a five-year term of PRS and unilaterally imposed that term on Reyes. Reyes signed a DOP form entitled "Certificate of Release to Parole Supervision, Determinate - Post Release Supervision" which stated that Reyes was subject to a PRS term to commence on October 5, 2007, and to end on October 5, 2012.

Reyes's determinate prison sentences expired on November 27, 2008. However, New York law provides that an offender who serves six-sevenths of a determinate sentence and has earned sufficient good-time credit shall be released from prison early on conditional release, "if he or she so requests." N.Y. Penal Law § 70.40(1)(b); N.Y. Correct. Law § 803(c). A person released early on conditional release "shall be under the supervision of the state department of corrections and community supervision for a period equal to the unserved portion of the term." N.Y. Penal Law § 70.40(1)(b). Reyes met these conditions and was released from prison early on October 5, 2007 -- the date upon which she had completed six-sevenths of her determinate sentences. Her administratively imposed PRS sentence began that day.

On October 14, 2008, defendant Tracy referred the plaintiff to a state court judge as a "designated person" who may require resentencing pursuant to

8

Correction Law § 601-d. On November 6, 2008, the plaintiff was taken into custody and incarcerated for a violation of the conditions of the five-year PRS term. While in custody for the PRS violation, the maximum expiration date of Reyes's determinate sentences expired on November 27, 2008. On December 5, 2008 -- one week after her determinate sentences expired -- a state court judge resentenced Reyes under Correction Law § 601-d to two concurrent two-and-one-half year terms of PRS.[2]

Reyes brought this action under 42 U.S.C. § 1983 seeking money damages for alleged due process and double jeopardy[3] violations arising from the administratively imposed PRS term. This appeal focuses on two time periods: first, the time that elapsed from Reyes's release from prison on October 5, 2007,

---

[2] The sentencing judge imposed these two-and-one-half year terms of PRS to follow the eight-year prison terms, and the judge made these sentences retroactive to May 22, 2001, the date that Reyes's determinate sentences began. The court-imposed release date was therefore April 5, 2010, rather than the original administratively imposed release date of October 5, 2012. The parties have made no arguments with respect to the retroactive nature of the judicially imposed PRS term. That the judicially pronounced term of PRS was imposed nunc pro tunc has no effect on this Court's consideration of the period of PRS that elapsed from Reyes's initial prison release on October 5, 2007, until her resentencing on December 5, 2008, because that time period elapsed before a judge imposed PRS.

[3] Reyes's double jeopardy claim pertained to the period of PRS imposed by a judge on December 5, 2008, and was dismissed on a previous motion because Reyes did not "adequately allege the personal involvement of the[] defendants in the asserted double jeopardy violation." Rivera v. Annucci, No. 13cv1239, 2015 WL 590185, at *5 (E.D.N.Y. Feb. 11, 2015). The double jeopardy claim is not at issue on this appeal.

until her determinate sentences expired on November 27, 2008; and second, the following week of PRS that ensued after her determinate sentences expired on November 27, 2008, until she was resentenced to PRS by a judge on December 5, 2008.

The defendants moved for summary judgment, arguing that (1) Reyes's constitutional rights were not violated, (2) the defendants are entitled to qualified immunity, and (3) Reyes had not established that the defendants were personally involved in the alleged constitutional deprivation. Reyes v. Fischer, No. 13cv1239, 2017 WL 4350440, at *2, *8, *10-11 (E.D.N.Y. Mar. 16, 2017). Reyes also moved for summary judgment, arguing that the defendants violated her right to due process and that the defendants were not entitled to qualified immunity. Id. at *8. The district court found that the defendants violated Reyes's due process rights and were not entitled to qualified immunity. Id. at *12. The district court did not rule on the issue of damages because the parties had further discovery to conduct regarding the extent of Reyes's injuries. Id. The defendants moved for reconsideration, which the district court denied. Reyes v. Fischer, No. 13cv1239, 2017 WL 4350415, at *2 (E.D.N.Y. May 25, 2017). The defendants timely appealed

10

from the denial of their motions for summary judgment on qualified immunity grounds.

## DISCUSSION

### A.

The rule that "[a]n order denying a motion for summary judgment is generally not a final decision within the meaning of [28 U.S.C.] § 1291 and is thus generally not immediately appealable" is inapplicable to denials of summary judgment based on a claim of qualified immunity. Plumhoff v. Rickard, 572 U.S. 765, 771 (2014). Qualified immunity "is an immunity from suit rather than a mere defense to liability," and therefore its denial is immediately appealable under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). This "Court has jurisdiction over interlocutory appeals based on qualified immunity when the defense can be decided based on questions of law," but this Court lacks jurisdiction over "the resolution of factual issues." Brown v. Halpin, 885 F.3d 111, 117 (2d Cir. 2018) (per curiam).

This Court reviews an order on a motion for summary judgment "de novo, construing all evidence in the light most favorable to the non-moving party." Betances, 837 F.3d at 171 (quoting Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d

11

54, 59 (2d Cir. 2015)). "We deny qualified immunity to government officials on summary judgment if (1) the facts . . . taken in the light most favorable to the officials establish a violation of a constitutional right; and (2) the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (alteration in original) (internal quotation marks omitted).

Government officials performing discretionary functions generally are afforded qualified immunity, and are therefore "shielded from liability for civil damages" when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Jackler v. Byrne, 658 F.3d 225, 242-43 (2d Cir. 2011) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Therefore, the questions on this appeal are twofold. First, we must decide whether the district court correctly found that the defendants violated Reyes's constitutional due process rights. Second, we must decide whether those rights

were clearly established at the time of the defendants' conduct. We may consider these questions in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). The answers to these questions differ based on the relevant time period of Reyes's sentences. We first address the administratively imposed PRS Reyes served after her determinate sentences expired on November 27, 2008, until she was resentenced by a judge on December 5, 2008. Then, we address the administratively imposed PRS Reyes served after her initial release from imprisonment on October 5, 2007, until the expiration of her determinate sentences on November 27, 2008.

## B.

In their reply brief, the defendants concede that they are not entitled to qualified immunity for the period between the end of Reyes's determinate sentences on November 27, 2008, and December 5, 2008 -- the date on which Reyes was resentenced to PRS by a judge. The concession is plainly correct.

"Earley I ruled that the federal-law principle that punishment for a crime could not properly be imposed administratively but could only be imposed by the court had been clearly established by the United States Supreme Court . . . ." Vincent, 718 F.3d at 167. Earley I, which was issued on June 9, 2006, "clearly

established that where the court has not included PRS in a defendant's sentence, DOCS may not add that term without violating federal law." Id. at 168; see also Hassell, 879 F.3d at 48.

The defendants initially argued in this case that they took reasonable steps to comply with Earley I and therefore are entitled to qualified immunity. However, this Court's recent holding in Hassell v. Fischer forecloses the argument that the defendants' response to Earley I was reasonable. 879 F.3d at 51. The defendants in that case -- Fischer, Annucci, and Tracy -- are the same defendants in this appeal. Id. at 49. In Hassell, this Court held that the defendants' delay in complying with Earley I was unreasonable, and therefore any steps the defendants took to comply with Earley I did not shield them from liability. Id. at 51; see Betances, 837 F.3d at 172 ("That the defendants [Fischer, Annucci, and Tracy] eventually took reasonable steps to comply with Earley I cannot excuse their unreasonable delay in doing so.").

Indeed, the defendants did not seek resentencing of Reyes under Correction Law § 601-d until October 14, 2008 -- more than two years after this Court decided Earley I and more than one year after October 5, 2007, when Reyes was released from prison and began serving her administratively imposed term

14

of PRS. Because the right to be free from administratively imposed PRS was clearly established by Earley I and its progeny, and because the defendants did not take reasonable steps to comply with Earley I, the defendants are not entitled to qualified immunity for the week between the end of Reyes's determinate sentences on November 27, 2008, and the beginning of her PRS term that was pronounced by a judge on December 5, 2008. The parties originally disputed this point, but in light of this Court's decision in Hassell, the defendants now concede that they are not entitled to qualified immunity for that period.

## C.

The defendants contend that because Reyes would have been subjected to conditional release if she had not been subjected to a term of PRS, Reyes cannot show that her due process rights were violated from her initial release on October 5, 2007, until her determinate sentences expired on November 27, 2008.

Reyes's right to be free from administratively imposed PRS following the expiration of her determinate sentences on November 27, 2008, until her resentencing on December 5, 2008, was clearly established at the time of the defendants' conduct. However, whether Reyes's constitutional rights were violated during the period of administratively imposed PRS that she served after

15

her release from imprisonment on October 5, 2007, and <u>before</u> her determinate sentences ended on November 27, 2008, was an issue of first impression in this Circuit until this Court decided <u>Hassell</u> -- a decision that had not yet issued when the district court issued its order on the motions for summary judgment. 879 F.3d 41. As the district court correctly observed, "[t]he narrow question of whether a plaintiff, subjected to administratively-imposed PRS <u>before</u> the maximum expiration date of her determinate sentence, suffered a cognizable deprivation of liberty does not appear to have been addressed in this Circuit." <u>Reyes</u>, 2017 WL 4350440, at *8 n.10 (emphasis added). The plaintiffs in <u>Betances</u>, for example, were members of a class that was certified only for members "who were sentenced to prison in New York State for a fixed term that did not include a term of PRS, but who were nevertheless subjected to PRS <u>after</u> the maximum expiration dates of their determinate sentences." 304 F.R.D. at 427 (emphasis added) (internal quotation marks omitted) (certifying class). Similarly, <u>Vincent</u> involved plaintiffs who were subjected to PRS after being released from serving their prison sentences, 718 F.3d at 160-61, and <u>Earley I</u> involved a habeas petitioner who contested the "addition" of an administratively imposed PRS term to his judicially pronounced sentence, 451 F.3d at 72.

While this Court has confronted the question of administratively imposed PRS a number of times, <u>Hassell</u> was the first of these appeals in which a judgment had been entered awarding damages to a prisoner. 879 F.3d at 44. <u>Hassell</u> was also the first appeal that presented the question of whether PRS that is administratively imposed prior to the expiration of a determinate sentence violates due process. <u>Id.</u> at 51-52.

The facts of <u>Hassell</u> closely correspond to the facts in this case. <u>Hassell</u> involved the same defendants as this case, and presented a situation where the plaintiff, Hassell, was released from prison after serving six-sevenths of his determinate sentence because he had earned sufficient good-time credit to be released early. <u>Id.</u> at 45. Like Reyes, Hassell began serving an administratively imposed PRS term upon his early release from prison. <u>Id.</u>

Under New York law, when an offender earns sufficient good-time credit, that offender may be released on what is called "conditional release" and serve the remainder of his or her determinate sentence in the community. <u>See</u> N.Y. Correct. Law § 803(c); N.Y. Penal Law § 70.40(1)(b). The defendants state that if Reyes had not been released on PRS, then she would have been subjected to supervision under conditional release until the expiration of her determinate

17

sentences. The same was true in <u>Hassell</u>; had Hassell not been subjected to a term of PRS, he would have been supervised under conditional release until the expiration of his determinate sentence. 879 F.3d at 45. The district court in <u>Hassell</u> found the defendants liable for violating Hassell's due process rights and awarded nominal damages of $600 plus attorney's fees. A portion of the nominal damage award pertained to the time period before Hassell's determinate sentence ended, during which he would otherwise have been subjected to conditional release, and a portion represented the time period between the expiration of Hassell's determinate sentence and his resentencing by a judge. <u>Id.</u> at 44.

On appeal, this Court vacated the portion of the nominal damages that pertained to the period of PRS that elapsed before Hassell's determinate sentence ended -- that is, when he would have otherwise been supervised under conditional release. This Court explained that for the period after Hassell was released from custody because of good-time credits, until the date on which his sentence terminated six months later, Hassell

> would have been subject to conditional release during this time period had a PRS term not been imposed. Hassell has made no showing that the conditions of his PRS term were in any respect more onerous than those

18

> of conditional release would have been. Without any showing of an adverse consequence during [this period], Hassell has not suffered a denial of his due process rights during that period.

Id. at 52. This Court therefore vacated the portion of the nominal damages award attributable to that period. Id.

Hassell teaches that, to prevail in her suit for a due process violation, a plaintiff subjected to administratively imposed PRS must show that, for the period of time that the plaintiff would otherwise have been subjected to conditional release, the conditions of administratively imposed PRS were "more onerous." Id. This follows from the basic requirement that a plaintiff claiming a violation of due process must show a deprivation of liberty or property. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (explaining that "standard analysis under [the Due Process Clause] proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient"); Albright v. Oliver, 510 U.S. 266, 275 (1994) (Scalia, J., concurring) (stating that the Due Process Clause of the Fourteenth Amendment "guarantees certain procedures as a prerequisite to deprivation of liberty"). It is only after determining that such a deprivation occurred that courts consider whether the

19

procedure at issue "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Medina v. California, 505 U.S. 437, 445 (1992) (internal quotation marks omitted).

Because Hassell had failed to show that the conditions of administratively imposed PRS were any more onerous than the deprivations Hassell would have encountered under conditional release, he failed to show any deprivation of liberty. Therefore, Hassell had not shown a constitutional violation and was not entitled to an award of even nominal damages for that period. Cf. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986) (explaining that "nominal damages . . . are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury"); Patterson v. Coughlin, 905 F.2d 564, 568 (2d Cir. 1990) ("It is clear that where there has been a denial of due process, the victim is entitled at least to nominal damages.").

In this case, there are unresolved factual questions as to whether the conditions of administratively imposed PRS are more onerous than those of conditional release. In Hassell, this Court found that the plaintiff had not presented any evidence that the conditions of administratively imposed PRS

20

were in fact more onerous than the conditions of conditional release. And in this case, the defendants contend that the conditions are no more onerous.

Unlike in Hassell, the parties have not yet conducted discovery with respect to the question of whether Reyes's PRS conditions were in fact more onerous than the conditions of conditional release would have been. Reyes, 2017 WL 4350440, at *11-12. The district court framed that question only as one of damages, rather than one of liability, and in that regard, the district court's order is inconsistent with Hassell, which made clear that the "more onerous" standard is not only a question of damages, but also one of liability. 879 F.3d at 52 ("Without any showing of an adverse consequence . . . [the plaintiff] has not suffered a denial of his due process rights during that period."). Whether the two forms of supervision are equivalent is a question of fact that this Court lacks jurisdiction to decide on an interlocutory appeal. Brown, 885 F.3d at 117.

Factual questions that are crucial to the disposition of the defendants' qualified immunity defense remain -- specifically how the conditions of Reyes's PRS compare to those that would have been imposed under conditional release. We therefore must dismiss, for lack of jurisdiction, that part of the appeal that

21

concerns the period of time during which Reyes would have been subject to conditional release.

## CONCLUSION

We have considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the reasons explained above, we **AFFIRM** the district court's order denying qualified immunity to the defendants for the week of administratively imposed PRS after the plaintiff's determinate sentences had expired. We **DISMISS** the appeal for lack of jurisdiction over the district court's denial of qualified immunity for the period between October 5, 2007, and November 27, 2008, when the plaintiff would otherwise have been subject to conditional release. We **REMAND** to the district court for further proceedings consistent with this opinion.

HALL, *Circuit Judge*, concurring in part and dissenting in part:

This case will proceed in the district court on remand: a result with which I concur for the reasons articulated below. I respectfully dissent, however, from the analysis by which the majority arrived at its decision to remand. Unlike the majority, I would hold that we have appellate jurisdiction to decide the defendants' interlocutory appeal from the district court's determination that they are not entitled to qualified immunity. I would then affirm that determination *in toto* and thus return the case to the district court for further proceedings. I part company with the majority when it concludes that factual issues concerning whether the conditions of Reyes's post-release supervision ("PRS") were more onerous than the conditions to which she would have otherwise been subjected on conditional release preclude interlocutory appellate jurisdiction.

\* \* \*

At issue here are two periods during which Reyes was subjected to PRS: (1) the period between her October 5, 2007 release from prison and the November 27, 2008 expiration of her determinate sentences and (2) the period between that expiration and her judicial resentencing on December 5, 2008. As to the latter period, the majority concludes that the defendants were "plainly" not entitled to

qualified immunity. *See* Slip Op. at 12–14. I fully agree. I disagree, however, that we are without jurisdiction to review whether the defendants were entitled to qualified immunity for the former period, and to that extent, I dissent.

We have previously "held that [(1)] the New York State Department of Correctional Services's ('DOCS') practice of administratively adding a term of [PRS] to sentences in which PRS had not been imposed by the sentencing judge and [(2)] the New York State Division of Parole's ('DOP') practice of enforcing the administratively added PRS terms violated the Constitution." *Betances v. Fischer*, 837 F.3d 162, 164 (2d Cir. 2016). Despite Reyes's having not been judicially sentenced to a term of PRS, DOCS unilaterally imposed a term of PRS on her. Second, Reyes was released on October 5, 2007, after which that DOCS-imposed term of PRS was enforced. *See People v. Williams*, 19 N.Y.3d 100, 104 (2012) ("Such a defendant who is conditionally released immediately commences serving the imposed term of PRS and the remaining term of incarceration is 'held in abeyance' during this period." (quoting N.Y. Penal Law § 70.45(5))). Based on those two facts, this would be the end of the story for this interlocutory appeal for me, and I would affirm the determination that the defendants were not entitled to qualified immunity.

The wrinkle here, which causes the divergence between the majority and me, is that absent the unlawfully imposed PRS term, Reyes would still have been subjected to a term of conditional release until the November 27, 2008 expiration of her determinate sentences. The majority reads this to raise issues of material fact concerning whether the conditions of Reyes's PRS were more onerous than those of conditional release would have been. *See* Slip Op. at 19. Relying on our decision in *Hassell v. Fischer*, 879 F.3d 41 (2d Cir. 2018), the majority has determined that these issues deprive us of jurisdiction to answer the qualified-immunity question because, in the majority's view, only if the conditions of PRS were harsher than those of conditional release would Reyes suffer a cognizable due process violation.[1]

I do not disagree that factual issues here persist. In my view, however, those issues go to whether Reyes can demonstrate damages as a result of the due process

---

[1] As the majority correctly notes, our jurisdiction over this interlocutory appeal is circumscribed in that we cannot resolve issues of fact. *See, e.g.*, *Bolmer v. Oliveira*, 594 F.3d 134, 140–41 (2d Cir. 2010). Thus, if the majority is correct that having been subjected to more onerous conditions while on PRS is an element of a PRS due process claim, then disputed factual issues pertaining to the conditions of Reyes's release would indeed deprive us of jurisdiction to answer the qualified-immunity question with respect to the period during which Reyes would have otherwise been subjected to conditional release. That is, our jurisdiction depends on whether, accepting her version of the facts, Reyes has adequately established a cognizable deprivation of due process.

violation already inflicted, not to whether she has suffered a deprivation of due process in the first instance. "Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, . . . the denial of due process should be actionable for nominal damages without proof of actual injury." *See Carey v. Piphus*, 435 U.S. 247, 266 (1978).[2]

The majority sidesteps these principles by relying on language from our recent decision in *Hassell*, in which we addressed, among other things, these same defendants' qualified immunity for the period between Hassell's release and the expiration of his determinate sentence. To be sure, there we said that "Hassell has made no showing that the conditions of his PRS term were in any respect more onerous than those of conditional release would have been. Without any showing

---

[2] *Accord Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004) ("For example, when a defendant has deprived the plaintiff of liberty or property without affording him a hearing as required by the Due Process Clause, but the defendant proves that the adverse action would have been taken even if a proper and timely hearing had been held, the plaintiff has not proved compensable injury and is entitled only to nominal damages."); *Robinson v. Cattaraugus Cty.*, 147 F.3d 153, 162 (2d Cir. 1998) ("If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, the plaintiff is entitled to an award of at least nominal damages as a matter of law.").

4

of an adverse consequence during [the relevant period], Hassell has not suffered a denial of his due process rights during that period." *Hassell*, 879 F.3d at 52 (citing *United States v. Ray*, 578 F.3d 184, 200 (2d Cir. 2009)). The majority reads this language as having imposed a "more onerous" requirement on claims for deprivation of due process related to PRS imposed and enforced *before* the expiration of a term of imprisonment. *Hassell* admittedly is susceptible to the reading attributed to it by the majority. But *Hassell* sends mixed signals.

On the one hand, the language quoted above does indeed lead one to believe that an element of a PRS due process claim is that the conditions imposed by PRS must be more onerous than those to which a prisoner would have otherwise been subjected. There is also the fact that *Hassell* vacated even the district court's grant of nominal damages awarded for imposition of PRS during the relevant period, further suggesting that Hassell had not suffered a cognizable deprivation of due process. *See Carey*, 435 U.S. at 266.

On the other hand, the quoted language from the text of *Hassell* comes after the opinion's conclusion that the defendants were *not* entitled to qualified immunity during the relevant period, *see Hassell*, 879 F.3d at 50–51, a conclusion that necessarily entails findings both that the defendants *did* violate Hassell's

5

constitutional rights and that those rights were clearly established, *see, e.g., Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). And as the Supreme Court has already told us, the denial of due process is the denial of an "absolute" right, entitling the plaintiff to at least nominal damages. *See Carey*, 435 U.S. at 266.

What is more, *Hassell* can be read to present its supposed "more onerous" requirement as an afterthought; it presents no rationale as to why an individual's liberty interest in being free from the administrative (non-judicial) imposition of PRS in the first instance, *see Betances*, 837 F.3d at 164, might become non-existent when, as here, that individual would otherwise be subjected to conditional release.[3] This is perhaps unsurprising given the briefing in that case: Hassell argued that he suffered a deprivation of due process only *after* the expiration of his determinate sentence, not during the period between his release on PRS and the expiration of his sentence. *See* Brief of Plaintiff-Appellant-Cross Appellee at 22–26, *Hassell*, 879 F.3d 41 (Nos. 16-2835 (L), 16-3641 (XAP)). Said differently, Hassell did not even argue that he was deprived of due process by being subjected

---

[3] By contrast, in the context of due process required for prison discipline, this Court and the Supreme Court have made clear that "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

to administratively imposed PRS when he otherwise would have been subjected to conditional release, and the Court in *Hassell* thus did not have the benefit of full adversarial briefing on this issue.

These conflicting signals do create some uncertainty as to the contours of a due process claim arising from administratively imposed PRS, uncertainty that the majority does not directly acknowledge. While the majority's holding is certainly a reasonable resolution of this uncertainty, I would not resolve the issue in this manner without facing it head on. And facing it head on, I see no support in our precedent for imposing this new requirement: *Hassell* does not purport to add anything new, and without a much clearer indication than it presents, I would not assume it did so. Further, because the reading the majority gives *Hassell* is fundamentally at odds with *Hassell*'s reasoning and structure, I must conclude that *Hassell* in fact did not intend to impose any "more onerous" requirement on PSR claims like the one at issue here.[4] The admittedly persisting factual issues

---

[4] To the extent my reading of *Hassell* is arguably inconsistent with some of the opinion's language, were I writing for the majority, I would invoke this Court's "mini en banc" process to issue an opinion clarifying that, one, *Hassell* did not impose an additional "more onerous" requirement for claims in circumstances such as these and, two, that *Hassell*'s vacatur of nominal damages was error. *See, e.g., Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 & n.9 (2d Cir. 2009) (describing mini en banc process); *see also* Jon O. Newman, *The Second*

identified by the majority go to Reyes's ability to demonstrate damages, not to whether her claim is cognizable on appeal of a qualified-immunity challenge and not to whether we thus lack appellate jurisdiction to review that challenge. Determining that we do have jurisdiction to consider that challenge on appeal, I, would affirm in full the district court's denial of qualified immunity.

Functionally, the result reached by the majority is the same here: *this* case will proceed.  But I would ensure that a future case does not stumble needlessly, and perhaps with a more deleterious result, over this issue.  I concur in part and dissent in part.

---

*Circuit Review—1987–1988 Term: Foreword: In Banc Practice in the Second Circuit, 1984–1988*, 55 BROOK. L. REV. 355, 367–68 (1989).